UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | Case No. BK11-80297-TJM |
| QA3 FINANCIAL CORP., | Chapter 11 |
| Debtor. | |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### OBJECTION TO MOTION TO APPROVE SETTLEMENT AGREEMENT FILED BY
### CATLIN SPECIALTY INSURANCE COMPANY

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned Chapter 11 bankruptcy proceeding, by and through undersigned counsel, hereby objects to Catlin Specialty Insurance Company's Motion To Approve Settlement Agreement. (Doc. No. 84). In support of this Objection, the Committee respectfully states as follows:

1. On February 11, 2011, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Committee was appointed on April 29, 2011. (Doc. No. 72).

3. On May 5, 2011, Catlin Specialty Insurance Company ("Catlin") filed a Motion to Approve Settlement Agreement (the "Motion"). (Doc. No. 84).

4. Prior to filing its bankruptcy petition, the Debtor was a securities broker-dealer. In 2008, Catlin issued Debtor a "Broker/Dealer and Registered Representatives Professional Liability Policy" (the "Policy"). (Doc. No. 68).

5. There have been many claims brought against Debtor in recent months and years that implicate the Policy's coverage. Debtor's Schedules identify hundreds of individuals holding unliquidated claims against Debtor, and its Statement of Financial

Affairs identifies approximately 57 actions that have been filed against it. During the First Meeting of Creditors, Debtor's representative testified that the reason Debtor filed for bankruptcy was because of a $1.3 million dollar arbitration award that was entered against Debtor and Catlin's refusal to provide coverage for the claim under the Policy.

6. One of the actions that is identified on Debtor's Statement of Financial Affairs is the subject of Catlin's Motion. Feliciana Bank and Trust Company and Feliciana Bank and Trust Company (collectively "FB&T") have filed claims against Debtor and other defendants. (Doc. No. 84). The claims have been referred to arbitration.

7. In the Motion, Catlin is asking the Court to approve a settlement agreement between FB&T and Debtor and the other defendants. The proposed settlement agreement provides that Catlin will pay FB&T $70,000.00, and in turn, FB&T will dismiss its claims against Debtor and its affiliated entities with prejudice. (Doc. No. 84, Ex. "A").

8. The Court should deny Catlin's Motion.

9. Both the Policy and its proceeds are property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1). *In re Titan Energy, Inc.*, 837 F.2d 325, 328-29 (8th Cir. 1988). Often, liability policies constitute the most important asset of a Debtor's estate. *In re Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir. 1995) (citations omitted).

10. In this case, the Policy is an important asset of Debtor's estate based upon the large number of claims that have been filed against Debtor and that implicate the coverage of the Policy. Debtor's Schedules and Operating Report indicate that Debtor has few other assets. It appears that there are a large number of creditors that

will be seeking a limited amount of Policy proceeds. The Policy proceeds should not be depleted and distributed in a haphazard manner.

11. The approval of settlement agreements and expenditure of Policy proceeds should not be done on an ad hoc basis, settlement agreement by settlement agreement, whenever Catlin is able to reach an agreement with the relevant plaintiff/claimant. Instead, to the extent that the Court determines that settlement agreements can be entered into during the bankruptcy process, the approval of settlement agreements should be done as part of a comprehensive framework that is prepared by the Debtor and that will allow for consistent settlement agreements and the orderly, fair and equitable distribution of the limited Policy proceeds.

12. Moreover, on May 24, 2011, Debtor filed an adversary proceeding in this Court against FB&T and Catlin, seeking the following:

    a. A judgment declaring that the Policy and its proceeds are property of the Debtor's estate;

    b. A judgment declaring that the automatic stay prohibits Catlin from taking any action, including the payment of defense expenses and the payment or settlement of claims, which would interfere with, deplete, and/or exercise control over estate assets, including the Policy and its proceeds; and

    c. A preliminary injunction enjoining Catlin from taking any action, including the payment of defense expenses and the payment or settlement of claims, which would interfere with, deplete, and/or exercise control over estate assets, including the Policy and its proceeds.

(Doc. No. 112); Adversary Case No. 11-08052 (the "Adversary Proceeding").

13. Catlin should not be allowed to distribute or pay any Policy proceeds to any party, including FB&T, through a settlement agreement or otherwise, until the issues raised by the Debtor in the Adversary Proceeding are resolved.

WHEREFORE, the Official Committee of Unsecured Creditors respectfully requests that the Court deny Catlin Specialty Insurance Company's Motion to Approve Settlement Agreement.

Dated this 25th day of May, 2011.

> The Official Committee of Unsecured Creditors,
>
> By: */s/ Kristin M.V. Farwell*
> Donald L. Swanson, #16385
> Brian J. Koenig, #23807
> Kristin M.V. Farwell, #23919
> KOLEY JESSEN P.C., L.L.O.
> One Pacific Place, Suite 800
> 1125 South 103rd Street
> Omaha, NE  68124-1079
> (402) 390 9500
> (402) 390 9005 (facsimile)
> Don.Swanson@koleyjessen.com
> Brian.Koenig@koleyjessen.com
> Kristin.Farwell@koleyjessen.com
>
> Attorneys for the Official Committee of Unsecured Creditors.

## **CERTIFICATE OF SERVICE**

On this 25th day of May 2011, I caused the above and foregoing to be filed with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

> */s/ Kristin M.V. Farwell*
> Kristin M.V. Farwell

591650.1